```
                     UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

MARIA FIDELINA PEREZ,            :     CIV. NO. 3:01CV01782 (SRU)
Petitioner,                      :
                                 :
v.                               :
                                 :
IMMIGRATION & NATURALIZATION     :
SERVICE and GARY COTE,           :
Officer-in-Charge, INS,          :
Respondents.                     :     JULY 8, 2004
```

### RESPONSE TO PETITIONER'S AMENDED
### PETITION FOR WRIT OF HABEAS CORPUS

Respondent Immigration and Naturalization Service ("INS"), now a part of the Department of Homeland Security ("DHS), respectfully submits the instant response to petitioner Maria Fidelina Perez's amended petition for writ of habeas corpus. For the reasons set forth below and in the Respondent's previous filings, the petition should be dismissed and the Court's Order staying petitioner's removal vacated.

The amended petition adds one claim. Specifically, it alleges at ¶ 13 that the Attorney General's decision in <u>In re Y-L, In re A-G-, and In re R-S-R-</u>, 23 I & N Dec. 270 (A.G., March 5, 2002), 2002 WL 358818, found that "all cases involving unlawful trafficking in controlled substances are per se 'particularly serious offenses' thereby automatically disqualifying any individual from claiming a right to withholding of deportation. This categorical designation by the Attorney General is both unconstitutional and illegal in violation of the clear intent of Congress as found in the Act and will not support

DHS' position that petitioner in this case is not eligible for Withholding of Removal." The petitioner further claims that the reliance of DHS upon that decision "for justifying Petitioner's removal from the United States amounts to illegal rulemaking and violation of the Administrative Procedures Act, 5 U.S.C. Section 553 by failing to properly promulgate rules under the Act. In addition, the decision exceeds the authority that Congress delegated to the Attorney General when the per se rule of eligibility was created . . . ."

The Respondent will not repeat the entire background of this case because it was set forth in the December 7, 2001 dated response. Nor will the respondent address the other claims raised by the petitioner, as those other claims were discussed in the earlier response. Instead, the respondent will discuss only this new claim.

## DISCUSSION

As an initial matter, contrary to the petitioner's assertion, the respondent has not to date relied on the Attorney General's decision in Y-L-. Nowhere in its previous filings is there a mention of that decision. In any event, DHS' reliance on it now is completely appropriate. Further, contrary to the petitioner's contention, the Attorney General's decision in Y-L- did not establish a per se rule. Rather, it created a rebuttable presumption. Accordingly, the petitioner's entire premise that

Y-L- is unconstitutional and constitutes impermissible rulemaking is fatally flawed. Finally, even if Y-L- were unconstitutional, the previous, more lenient standard, found in Matter of S-S-, 22 I. & N. Dec. 458 (BIA 1999) and Matter of L-S-, 22 I. & N. Dec. 645 (BIA 1999), would apply and the immigration judge and Board correctly applied those decisions in this case. Thus, under any standard, the petitioner was convicted of a "particularly serious crime."

A.   Y-L- DOES NOT CREATE A PER SE RULE

The Attorney General's decision in In re Y-L-, Int. Dec. 3463, 2002 WL 358818 (BIA, March 5, 2002), did not create a per se rule. In fact, the Attorney General specifically declined to issue a categorical, or per se, rule. See Matter of Y-L, 23 I. & N. Dec. at 276 ("I might be well within my discretion to conclude that all drug trafficking offenses are per se 'particularly serious crimes' under the INA. I do not consider it necessary. . ."). Instead, the Attorney General concluded that "it is my considered judgment that aggravated felonies involving unlawful trafficking in controlled substances presumptively constitute 'particularly serious crimes' within the meaning of section 241(b)(3)(B)(ii). Only under the most extenuating circumstances that are both extraordinary and compelling would departure from this interpretation be warranted or permissible."

Indeed, recognizing the discretionary nature of the

determination, the Attorney General held that

> <u>I do not consider it necessary, however, to exclude entirely the possibility of the very rare case where an alien may be able to demonstrate extraordinary and compelling circumstances that justify treating a particular drug trafficking crime as falling short of that standard</u>. While this opinion does not afford the occasion to define the precise boundaries of what those unusual circumstances would be, they would need to include, at a minimum: (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles. Only if <u>all</u> of these criteria were demonstrated by an alien would it be appropriate to consider whether other, more unusual circumstances (e.g., the prospective distribution was solely for social purposes, rather than for profit) might justify departure from the default interpretation that drug trafficking felonies are 'particularly serious crimes.' I emphasize here that such commonplace circumstances as cooperation with law enforcement authorities, limited criminal histories, downward departures at sentencing, and post-arrest (let alone post-conviction) claims of contrition or innocence do not justify such a deviation.

<u>Id</u>. (emphasis added).

Clearly, then, the petitioner's entire premise is flawed and this flaw defeats the per se claim and those claims that follow therefrom.

B.  <u>CREATION OF A REBUTTABLE PRESUMPTION IS APPROPRIATE</u>

Even with DHS relying on <u>Y-L-</u>, the creation of a rebuttable presumption is entirely appropriate. Thus, <u>Y-L-</u> supports a

finding that the petitioner's crime was particularly serious.

For instance, the district court in Reyes-Sanchez v. Ashcroft, 261 F. Supp. 2d 276, 285-86 (S.D.N.Y. 2003), held that the Attorney General did not create a categorical definition, i.e., per se rule, applicable to all aliens regardless of their individual circumstances. Rather, the court held that the Attorney General created a rebuttable presumption and that creating a rebuttable presumption did not exceed the Attorney General's authority.

> The court analyzed the issue as follows:
>
> The Court must give substantial deference to executive agencies in their interpretations of statutory law. See Ahmetovic v. INS, 62 F.3d 48, 51 (2d Cir. 1995); Osorio v. INS, 18 F.3d 1017, 1022 (2d Cir. 1994). In reviewing the Attorney General's regulation,
>
> [i]f the intent of Congress is clear, that is the end of the matter for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue ... the question for the court is whether the agency's answer is based on a permissible construction of the statute. Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)(footnotes omitted).
>
> The Attorney General's pronouncement in In re Y-L- takes away a significant amount of discretion from the IJ and the BIA with respect to drug trafficking offenses by creating a rebuttable presumption, with only limited exceptions, that those offenses are "particularly serious crimes." However, Congress did not directly address the precise question at issue here: namely, whether and under what conditions it might be appropriate for the Attorney General to exercise his discretion pursuant to 8 U.S.C. §

1231(b)(3)(B) to designate certain categories of offenses as "particularly serious crimes" either per se or as a matter of rebuttable presumption. The plain language of the statute does not require the Attorney General to make determinations about "particularly serious crimes" on a case-by-case basis. The statute is silent on this point and gives the Attorney General no specific instructions for making this determination. See Steinhouse v. Ashcroft, 247 F.Supp.2d 201, 206-07 (D. Conn. 2003). Furthermore, the legislative history, which petitioner urges upon the Court, is insufficiently clear to conclude that the Attorney General is absolutely precluded from designating certain categories of crimes "particularly serious" as a matter of rebuttable presumption that leaves room for some individualized analysis of a given alien's conviction.

Thus, the question for this Court is whether the Attorney General's decision is based on a permissible construction of the statute. Chevron, 467 U.S. at 842-43, 104 S.Ct. 2778. Section 1231(b)(3)(B) confers discretion on the Attorney General to determine circumstances in which an alien has been convicted of a particularly serious crime. Congress "left a gap for the agency to fill" and there was "an express delegation of authority to the agency to elucidate a specific provision of the statute" through the agency's own discretionary determinations. Id. at 843-44, 104 S.Ct. 2778. As the Attorney General correctly notes, "there is long-standing congressional recognition that drug trafficking felonies justify the harshest of legal consequences." In re Y-L-, 23 I & N. Dec. at 275 (citing 8 U.S.C. § 1227(a)(2)(B) (deportation for controlled-substance violations); 8 U.S.C. § 1252(a)(2)(C) (no judicial review where alien's removal is predicated on a drug trafficking felony); 8 U.S.C. § 1228 (expedited removal for aggravated felonies, including drug trafficking felonies); 18 U.S.C. § 3592(c)(12) (conviction for serious federal drug offenses constitutes aggravating factor for purposes of weighing imposition of federal death penalty); 21 U.S.C. § 862 (convicted drug traffickers subject to order of ineligibility for federal benefits)). Similarly, the BIA has routinely determined that narcotics crimes are "particularly serious" for immigration purposes. See, e.g., Matter of U-M-, 20 I. & N. Dec. 327, 1991 WL 353519 (BIA 1991); Matter of

> Gonzalez, 19 I. & N. Dec. 682, 1988 WL 235432 (BIA 1988).
>
> Applying the Chevron standard, the Attorney General's regulation creating a rebuttable presumption that drug-trafficking felonies constitute "particularly serious crimes" neither unlawfully exceeds the scope nor constitutes an impermissible interpretation of 8 U.S.C. § 1231(b)(3)(B). Accordingly, petitioner's claim that his conviction was impermissibly designated a "particularly serious crime" must be denied.

Id. at 287-89.

Indeed, the legislative history supports the conclusion that 8 U.S.C. § 1231(b)(3)(B) commits to the Attorney General's discretion the determination of whether a crime is "particularly serious":

> Subsection (b)(3)(B) specifies that an alien is barred from this form of relief if, having been convicted of a particularly serious crime, the alien is a danger to the community. An aggravated felony or felonies for which the alien has been sentenced to an aggregate of 5 years imprisonment is deemed to be such a crime, but the Attorney General retains the authority to determine other circumstances in which an alien has been convicted of a particularly serious crime, regardless of the length of sentence.

H.R. Conf. Rep. No. 828, 104th Cong., 2nd Sess. 1996, 1996 WL 563320 (Sept. 24, 1996) (emphasis added). This is exactly what the Attorney General did. He determined other circumstances – the factors in Y-L- – under which an alien could be found to have been convicted of a particularly serious crime notwithstanding the sentence. There is an individualized determination under a higher standard and creation of that standard is lawful. Accordingly, the Attorney General neither exceeded his authority

in his decision in Y-L- nor engaged in unlawful rulemaking and the petitioner's claim must fail.[1]

C.   PETITIONER IS INELIGIBLE FOR RELIEF UNDER Y-L-

Even had the Immigration Judge and the Board applied Y-L-, both would have correctly found that the petitioner was convicted of a particularly serious crime under that decision. Accordingly, the petitioner's claim must fail.

In Y-L-, as noted above, the Attorney General created a list of factors, all of which the petitioner must meet before she could become eligible for withholding. Specifically, the Attorney General held that

> [w]hile this opinion does not afford the occasion to define the precise boundaries of what those unusual circumstances would be, they would need to include, at a minimum: (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.  Only if all of these criteria were demonstrated by an alien would it be appropriate to consider whether other, more unusual circumstances (e.g., the prospective distribution was solely for

---

[1]   The Respondent notes that the creation of a list of factors logically presumes that cases are reviewed on an individualized basis, which eviscerates the petitioner's claim that there is a per se rule.  If there was a per se rule, no list of factors would be necessary and any alien convicted of a drug trafficking crime would not be eligible for withholding.

>   social purposes, rather than for profit) might justify
>   departure from the default interpretation that drug
>   trafficking felonies are 'particularly serious crimes.'
>   I emphasize here that such commonplace circumstances as
>   cooperation with law enforcement authorities, limited
>   criminal histories, downward departures at sentencing,
>   and post-arrest (let alone post-conviction) claims of
>   contrition or innocence do not justify such a
>   deviation.

Y-L-, 2002 WL 358818.

As the immigration judge found, Exh. 8 to the December 7, 2001 dated Response, there is ample evidence that the petitioner fails to meet the factors in Y-L-. Specifically, the petitioner imported over a kilogram of heroin (1,025.9 grams), a huge quantity. Second, she was to be paid $10,000 simply for importing the heroin, which serves to establish the enormous value of the heroin itself once imported. Third, her involvement was not peripheral; indeed, she was the person at the center of the transaction. Thus, at the least, she cannot meet three of the factors and any claim that her offense was not particularly serious under Y-L fails.

D.    EVEN IF Y-L- WAS UNCONSTITUTIONAL, THE IMMIGRATION JUDGE AND THE BOARD CORRECTLY APPLIED THE FRENTESCU STANDARD

Even if Y-L- was applied, and even if it was unconstitutional, a point of course the Respondent does not concede because it plainly is constitutional, the Court need not reach this issue because even under the previous standard the Immigration Judge and the Board correctly held that the petitioner was convicted of a particularly serious crime.

In <u>Steinhouse v. Ashcroft</u>, 247 F.Supp.2d 201, 206-07 (D. Conn. 2003), this Court remanded a matter for consideration of the <u>Frentescu</u> factors, holding that "the BIA failed to consider the complete set of established factors for making" the determination that a crime was particularly serious. Specifically, the Court found that the immigration judge and the BIA failed to consider "whether the type and circumstances of the crime indicate that the alien will be a danger to the community." <u>Id.</u> at 204-05.

Here, the BIA already remanded the matter for that very consideration. Specifically, in the decision of remand, the BIA noted the standard at that time. It held that:

> [a]n alien who has been convicted of a "particularly serious crime" is ineligible for withholding of removal. <u>See</u> 8 U.S.C. 1231(b)(3)(B) (1997); 8 C.F.R. § 208.16(c)(2) (1998). <u>See also</u> <u>Matter of L-S-</u>, Interim Decision 3386 (BIA 1999); <u>Matter of S-S-</u>, Interim Decision 3374, at 4-6 (BIA 1999). Congress has determined that aggravated felonies whose aggregate sentences are less than 5 years are not per se "particularly serious" but may be determined by the Attorney general to be "particularly serious." <u>See</u> 8 U.S.C. § 1231(b)(3)(B). <u>See also</u> <u>Matter of L-S-</u>, <u>supra</u>; <u>Matter of S-S-</u>, <u>supra</u>. Consequently, Immigration Judges retain some discretion in those cases where the alien's aggregate sentence for aggravated felony convictions is less than 5 years.
>
> In cases where the alien's aggregate sentence for aggravated felony convictions is less than 5 years, the Immigration Judge should examine the conviction records and sentencing information in the alien's case. <u>The Immigration Judge should consider the nature and circumstances of the crime to determine whether the alien can be said to represent a danger to the community of the United States</u>. <u>Matter of L-S-</u>, <u>supra</u>;

> Matter of S-S-, supra; Matter of Frentescu, 18 I&N Dec.
> 244 (BIA 1982), modified, Matter of C-, 20 I&N Dec. 529
> (BIA 1992), and Matter of Gonzalez, 19 I&N Dec. 682
> (BIA 1988).
>
> We will remand the record to enable the Immigration
> Judge to apply the standard set forth in Matter of L-S,
> supra and Matter of S-S-, supra, to determine whether
> this is a particularly serious crime and whether
> respondent is eligible for withholding of removal.

Decision of the BIA, Exh. 7 to December 7, 2001 dated Response (emphasis added).

Then, on remand, the immigration judge conducted an exhaustive analysis of the law and the facts and reached the following conclusion:

> [f]or the respondent's knowing and intentional
> trafficking of 1,025.9 grams of heroin, she received a
> significant sentence, even considering the substantial
> downward departure obtained through important DEA
> cooperation.  She participated in a [sic]
> extraordinarily harmful illegal act, albeit only once.
> It was not inadvertent, but part of an epidemic tearing
> at the very fabric of the United States.  Such
> activity, although not accompanied by any aggravating
> circumstance, is indefensible, as her activity was a
> danger to the community.

Written Decision of the Immigration Judge, Exh. 7 to December 7, 2001 dated Response (emphasis added).  The Immigration Judge clearly considered the entire record and all of the necessary factors in reaching his decision, which was affirmed on appeal.

This Court need not, and should not, reach the petitioner's constitutional claim because under either the Y-L- standard or the Frentescu standard the petitioner has ben convicted of a particularly serious crime.  As the question of law need not be

11

reached, and without conceding that or any other issue concerning subject matter jurisdiction, the administrative agency's decision in this case remains purely discretionary and, for the reasons set forth above and in the December 7, 2001 filing, this Court does not have subject matter jurisdiction to reach the issue.

## CONCLUSION

Y-L- does not create a per se rule, only at best a rebuttable presumption that is completely appropriate and lawful. And in relying on that decision, the petitioner clearly has been convicted of a particularly serious crime.  In any event, even if the Court were to find Y-L- unconstitutional, the immigration judge and the Board correctly applied the previous standard, which the Court discussed at length in Steinhouse.  In conclusion, for the reasons set forth above and in the respondent's previous filings, the Court should dismiss petitioner's petition for writ of habeas corpus and vacate its earlier Order staying petitioner's removal.

                              Respectfully submitted,

                              KEVIN J. O'CONNOR
                              UNITED STATES ATTORNEY

                              JAMES K. FILAN, JR.
                              ASSISTANT UNITED STATES ATTORNEY
                              915 LAFAYETTE BOULEVARD
                              BRIDGEPORT, CONNECTICUT 06604
                              (203) 696-3000
                              FEDERAL BAR NO. ct15565

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was sent United States Mail, postage prepaid, on this date, to:

James E. Swaine
18 Trumbull Street
New Haven, CT 06511

Dated at Bridgeport, Connecticut this 8th day of July, 2004.

                                                      JAMES K. FILAN, JR.
                                                     ASSISTANT UNITED STATES ATTORNEY