FILED

2004 DEC 13 P 1: 25

UNITED STATES DISTRICT COURT

U.S. DISTRICT COURT
BRIDGEPORT, CONN

DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| MARIA FIDELINA PEREZ | * | C A NO. 3.01-CV-01782 (SRU) |
|     Petitioner | * | |
| | * | |
| V. | * | |
| | * | |
| IMMIGRATION AND | * | |
| NATURALIZATION SERVICE | * | |
| (Currently DEPARTMENT OF | * | |
| HOMELAND SECURITY) ET.AL. | * | December 8, 2004 |
|     Respondents | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PETITIONER'S REPLY BRIEF TO "RESPONDENT'S RESPONSE TO PETITIONER'S AMENDED PETITION FOR WRIT OF HABEAS CORPUS"**

Petitioner Maria Fidelina Perez (hereafter "Perez") respectfully submits this brief in response to respondent Immigration and Naturalization Service's (hereafter "INS") brief. Since the filing of this action, INS has become a part of the Department of Homeland Security (hereafter "DHS"), therefore respondent will hereafter be referred to as "DHS." For the reasons set forth below, petitioner's writ of habeas corpus should be granted and the case ordered remanded to the Immigration Court for a new hearing on the petitioner's claim of relief for withholding of removal.

1

## DISCUSSION

1. **In re Y-L exceeded the Attorney General's Rulemaking Authority because it contravenes the plain language and design of 8 U.S.C. 1231(b)(3)(B).**

In re Y-L, A-G, & R-S, 23 I & N Dec. 270 (BIA 2002), created an impermissible agency interpretation of 8 U.S.C. 1231(b)(3)(B) because it created a new reading of the term "particularly serious crime" that conflicts with the plain language and design of the statute. See MCI Telecommunications Corp. v. American Telephone & Telegraph Co, 512 U.S. 218, 229 (1994) (holding that "an agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear"). The plain language of 8 U.S.C. 1231(b)(3)(B) parses the term "particularly serious crime" in terms of "aliens" and the aggregate "sentences" or "terms of imprisonment" they receive for aggravated felonies. 8 U.S.C. 1231(b)(3)(B). The statute does not focus on the various types of crimes that comprise aggravated felonies. Id. The statute reads:

> For the purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining, that, notwithstanding the length of the sentence imposed, an alien has been convicted of a particularly serious crime.

2

Id. Thus, when the Attorney General found that "aggravated felonies involving unlawful trafficking in controlled substances <u>presumptively</u> constitute 'particularly serious crimes' within the meaning of section 241 (b)(3)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3)(B) (2001)," the focus of the "particularly serious crime" inquiry shifted from individual aliens and their specific crimes to a categorical types of felonies. See <u>In re Y-L, A-G, & R-S</u>, 23 I & N Dec. 270 (BIA 2002).

This newly created "presumption" further transformed the analysis under 8 U.S.C. 1231(b)(3)(B) because it caused an alien to demonstrate that his or her crime involving the trafficking of controlled substances was accompanied by "the most extenuating circumstances that are both extraordinary and compelling." See <u>In re Y-L, A-G, & R-S</u>, 23 I & N Dec. 270 (BIA 2002). To prove "the most extenuating circumstances that are both extraordinary and compelling," an alien must establish *all* of the following six prongs.

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

<u>In re Y-L, A-G, & R-S</u>, 23 I & N Dec. 270, 276-277 (BIA 2002). This effectively shifted the

3

burden of persuasion from the government to the alien because now the alien must establish each of these six factors, which Congress never considered, in order to avoid being classified as an individual who was convicted of a particularly serious crime. See Yousefi v INS, 260 F.3d 318 at 329 (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 "[a]n agency decision 'would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider [or has] entirely failed to consider an important aspect of the problem").

The above-mentioned requirements that In re Y-L established in the "particularly serious crime inquiry" both clash with the plain wording of the statute and establish several rigorous factors that an alien must prove, which are not in the statute. Thus, In re Y-L contravenes the very design 8 U.S.C. 1231(b)(3)(B) and is impermissible rulemaking.

2. **In Re Y-L exceeded the Attorney General's Rulemaking Authority because it established a per se rule**

In Re Y-L, 23 I & N Dec. 270 (A.G. 2002), established a per se rule and exceeded the attorney general's rulemaking authority. The government cites Reyes-Sanchez v. Ashcroft, 261 F.Supp.2d 276 (S.D.N.Y. 2003), and contends that In Re Y-L merely established "a heightened standard" to use when making individualized determinations of particularly serious crimes; however, this argument fails to recognize that

In Re Y-L's narrow exception established a six-part test. The mere fact that the Attorney General calls his ruling a "presumption" that is theoretically rebuttable does not make it so. In identifying a specific category of crime to be a "particularly serious offense" rather than to examine each individual alien on a case by case basis demonstrates not only the intent to form a per se bar but in fact a rule with that precise result. Under this framework, a crime is automatically categorized as "particularly serious" unless *all* six prongs are met under the so called exception. See In Re Y-L, A-G, & R-S, 23 I & N Dec. 270, 276-277 (BIA 2002). Such a test does more than say "…whether and under what conditions it might be appropriate for the Attorney General to exercise his discretion pursuant to 8 U.S.C. Section 1231(b)(3)(B) to designate certain categories of offenses as 'particularly serious crimes…;' Reyes Sanchez v. Ashcroft, 261 F.Supp2d 276, 287 (S.D.N.Y. 2003), rather this test effectively defines the term "particularly serious crime" as a crime that does not involve a small quantity of controlled substance, modest amount of money, peripheral involvement in the transaction and has elements of violence, organized crime, and harmful impact on juveniles. See In Re Y-L, A-G, & R-S, 23 I & N Dec. 270, 276-277 (BIA 2002). As a result the Attorney General's decision establishes a categorical framework for "particular serious offense" when it relates to the world of drug convictions. If a case does not fall within the exacting parameters set forth in the six prong test it can not under any other circumstances

avoid the label "particularly serious offense", thereby making, as to each such drug offense a per se rule. This was not the express language or intent of Congress when it authorized the Attorney General to exercise the discretion of the agency to find that under certain, undefined circumstances, an offense not fitting the precise definition of "particularly serious offense" could otherwise be held to that standard. As the language of the statute states the exception to the rule is couched in terms of an "alien" not a category of crime. 8 U.S.C. 1231 (b)(3)(B).

Therefore application of this per se rule to the Petitioner's case is an illegal action by the agency and can not form the basis, in any way, of the denial of her eligibility for relief from deportation in the form of withholding of removal.

### 3. Even if In Re Y-L creates a rebuttable presumption it is not applicable here because at the time Perez was sentenced on October 2, 1998 a conviction of a controlled substance did not automatically constitute a "particularly serious crime."

Perez was sentenced to twenty months imprisonment and five years of supervised release on October 2, 1998. In Re Y-L was not decided until March 5, 2002. The facts of this case parallel Kankamaleage v. INS, 353 F.3d 858 (9th Cir. 2003). "At the time Kankamalage pleaded guilty to robbery in 1998, a conviction for a particularly serious crime did not bar a grant of asylum. Back then, the INS regulations allowed the INS to exercise its discretion by weighing a number of equitable factors, none of which was controlling." Id. at 861. Furthermore, "The Supreme Court noted 'there can be little doubt that, as a general

6

matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions. The Supreme Court held that 'IIRIRA's elimination of any possibility of Section 212(c) relief for people who entered into pleas agreements with the expectation that they would be eligible for such relief clearly 'attaches a new disability, in respect to transactions or considerations already past." Id. at 863 citing Ct. Syr. Here, at the time Perez pleaded guilty, there was no rebuattable presumption that controlled substance violations constituted particularly serious crimes. Thus, In Re Y-L should not be applied to Perez because it would "attach a new disability in respect to transactions and considerations already past."

## CONCLUSION

Accordingly, petitioner's writ should be granted and the case remanded to the Immigration Court, through the Board of Immigration Appeals, for a new hearing on her application for withholding of removal.

By: _____
James E. Swaine
Attorney for the Petitioner
The Law Offices of James E. Swaine
18 Trumbull Street
New Haven, CT 06511
Federal Bar # CT02793
(203) 498-0086

## CERTIFICATION

This is to certify that a copy of the foregoing was sent via United States Mail, postage prepaid, on December 9th, 2004 to:

James K. Filan, Jr.
Assistant United States Attorney
915 Lafayette Blvd
Bridgeport, CT 06604

8