# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MARIA FIDELINA PEREZ,                    :
    Petitioner,                          :
                             :          CIVIL ACTION NO.
    v.                                   :          3:01cv1782 (SRU)
                             :
JAMES LOY, ACTING SECRETARY,             :
DEPARTMENT OF HOMELAND                   :
SECURITY, and ALBERTO GONZALES,          :
ATTORNEY GENERAL OF THE
UNITED STATES,
    Respondents.

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

      Maria Fidelina Perez is currently detained by the Bureau of Immigration and Customs

Enforcement ("BICE"), pending removal to her native Colombia.[1]  She petitions this court for a

writ of habeas corpus.  Perez claims that the immigration judge ("IJ") and Board of Immigration

Appeals ("BIA") misapplied the legal standards for determining (1) whether she was convicted of

a "particularly serious crime," and (2) whether she was eligible for relief under the Convention

Against Torture ("CAT" or "the Convention").  Because I find that the wrong legal standard was

applied to her claim for relief under CAT, I vacate the final order of deportation and remand the

---

[1] The original petition named the Immigration and Naturalization Service ("INS") as the respondent.  Following the creation of the Department of Homeland Security ("DHS"), BICE is now charged with the enforcement functions of the former INS.  *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  Because of the reorganization, there are now two cabinet level officials who may be ultimately responsible for Gorsira during his detention.  *Cf.* 8 U.S.C. § 1103(a)(1) (the Secretary of DHS is charged with the administration and enforcement of all laws relating to the immigration and naturalization of aliens) *with* 8 U.S.C. § 1226 (Attorney General detains and maintains custody of aliens).  Although neither party had moved for substitution, the court ordered *sua sponte* the substitution of James Loy, Acting Secretary of the Department of Homeland Security, as respondent prior to the issuance of this decision.  Following that substitution, the court added Alberto Gonzales, Attorney General of the United States, as a respondent.

case to the BIA with instructions to remand to the IJ for further consideration consistent with this opinion.[2]

## I.    Background

Perez is a native and citizen of Colombia, where she was born in 1939.  She arrived in the United States in 1972 as a non-immigrant visitor, and her status was adjusted to lawful permanent resident in 1980.  Perez has lived in the United States continuously since her arrival in 1972.  She has two grown children who are United States citizens.

In October of 1998, Perez was convicted of importing heroin in violation of 21 U.S.C. § 952.  She had smuggled over one kilogram of heroin into the United States from Colombia. Perez pled guilty, cooperated with the government, and was sentenced to twenty months' imprisonment and five years of supervised release.  Her daughter also cooperated extensively with the government over a five-year period.

The INS initiated removal proceedings in November of 1998, seeking to remove Perez from the United States as an individual convicted of a controlled substance offense and as an individual convicted of an aggravated felony.  8 U.S.C. §§ 1227(a)(2)(B)(i) and 1227(a)(2)(A)(iii).  On January 13, 1999, an immigration judge, sitting in Hartford, ordered Perez removed to Colombia and preterminated her applications for withholding of removal and asylum on the grounds that she was not eligible for either because of her conviction for an aggravated felony.  Perez appealed the IJ's ruling to the BIA.  The BIA sustained her appeal and remanded

---

[2] In her petition, Perez claims her due process rights were violated when the IJ took "administrative notice of facts regarding the systemic drug problems in America. . . ."  Amended Petition ¶ 15(b) (doc. # 10).  The IJ commented generally about the drug problem in the United States, but no facts were found by administrative notice.

the case for a determination under 8 U.S.C. § 1231(b)(3)(B)(ii) regarding whether she was convicted of a "particularly serious crime" and "was a danger to the community," thereby ineligible for withholding of removal.

Again before the IJ, Perez renewed her claim for withholding of removal and added an additional claim for relief under Article III of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). On November 18, 1999, the IJ ruled that Perez's conviction involved a "particularly serious crime," making her ineligible for withholding of removal. On December 16, 1999, the IJ denied Perez's application for relief under CAT because she failed to show that she would be "tortured" as that term is defined in the regulations implementing the Convention, 8 C.F.R. § 208.16 *et seq*. The BIA dismissed Perez's appeal on August 22, 2001, and entered a final order of deportation.

Pursuant to 28 U.S.C. § 2241, Perez petitions this court for a writ of habeas corpus.

## II.    Jurisdiction and Standard of Review

This court has jurisdiction under the general habeas statute, 28 U.S.C. § 2241, to review legal claims raised in Perez's habeas petition. *See INS v. St. Cyr*, 533 U.S. 289, 314 (2001). The court also has more limited authority to consider factual claims. *See Steinhouse v. Ashcroft*, 247 F. Supp. 2d 201, 205 (D. Conn. 2003).

First, for each claim the court decides if the BIA used the correct legal standard. *Khouzam v. Ashcroft*, 361 F.3d 161, 164 (2d Cir. 2004). Second, assuming the BIA identified the proper standard, the court uses a deferential "substantial evidence" standard to review whether the BIA applied the standard correctly. *Id.* at 165. Factual determinations are also reviewed under the substantial evidence standard. *Ramsameachire v. Ashcroft*, 357 F.3d 169,

177 (2d Cir. 2004). Application of law to undisputed facts is reviewed *de novo*. *Khouzam*, 361 F.3d at 164.

### III.  Issues

Perez's petition presents two separate legal issues: (1) whether the IJ and BIA applied the correct legal standard when determining whether Perez was convicted of a "particularly serious crime," and (2) whether the IJ and BIA used the correct legal standard when considering the "acquiescence" of government officials under CAT. With respect to the second question, I conclude that the correct legal standard was not applied.

### IV.  Discussion

A.    Conviction for a "Particularly Serious" Crime

Any alien convicted of an aggravated felony or an offense relating to a controlled substance is deportable. 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(B)(i). The statutory definition of "aggravated felony" includes drug trafficking. 8 U.S.C. § 1101(a)(43)(B). Accordingly, based on her conviction for importing heroin, Perez is deportable.

Section 241(b)(3)(A) of the INA provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). This prohibition on removal does not apply when "the alien, having been convicted by a final judgment of a particularly serious crime is a danger to the community of the United States." 8 U.S.C. § 1231(b)(3)(B)(ii).

-4-

A crime is "particularly serious" when it is "an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years," or when the Attorney General determines that, "notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime." 8 U.S.C. § 1231(b)(3)(B). Other than the phrase "is a danger to the community," the statute itself does not give the Attorney General any guidance in making this determination.

The language of the statute suggests a two-part analysis: (1) whether the alien has committed a particularly serious crime, and (2) whether the alien is a danger to the community. The BIA's interpretation of this section has conflated these two factors, requiring only one determination: whether the alien was convicted of a particularly serious crime. *See Matter of Frentescu*, 18 I. & N. Dec. 244, 1982 WL 190682 (BIA 1982). *See also Ahmetovic v. INS*, 62 F.3d 48, 53 (2d Cir. 1995) (discussing concern over BIA's conflation of two requirements).

    1.    *Frentescu* standard

In *Frentescu*, the BIA analyzed when a crime with an aggregate term of imprisonment of less than five years is particularly serious. First, some crimes are *per se* particularly serious or not particularly serious. *Id.* at 247. For all other crimes, IJs and the BIA use a set of four factors on a case-by-case basis to determine the seriousness of the crime.[3] *Id.* Under the *Frentescu* standard, the IJ and BIA need not make two distinct findings that an alien was both convicted of a particularly serious crime and is a danger to the community. Nevertheless, the factors used for

---

[3] The four factors set forth in *Frentescu* include: the nature of the conviction, the circumstances and the underlying facts of the conviction, the type of sentence imposed, and most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community. *Id.*

determining whether a crime is particularly serious include "most importantly, whether . . . the alien will be a danger to the community." *Id.*

When Perez's petition was before the IJ and BIA, the *Frentescu* standard guided their determinations. Gov't Exhibit 8, Written Decision of IJ (Nov. 18, 1999) at 13; Gov't Exhibit 10, Decision of BIA (Aug. 22. 2001) at 2. On appeal, the BIA – unlike the IJ – did not consider the fourth *Frentescu* requirement, dangerousness to the community. When the BIA fails to consider all four factors, it fails to apply the correct legal standard. *See Steinhouse*, 247 F. Supp. 2d at 201 (remanding BIA decision for failure to consider fourth Frentescu factor, the alien's dangerousness to the community).

        2.     *In re Y-L-*

Although the *Frentescu* standard governed the prior proceedings before the IJ and BIA, subsequent to their decisions, the Attorney General exercised his discretion under 8 U.S.C. § 1231(b)(3)(B) to classify most narcotics offenses as *per se* dangerous. *In re Y-L-,* 23 I. & N. Dec. 270, 2002 WL 358818 (A.G. Mar. 5, 2002). Under *In re Y-L-*, only in "extraordinary and compelling circumstances," is an alien who has been convicted of drug trafficking eligible for withholding of removal. *Id.* at 276. Only those offenses that meet all of the following six tests can rebut the presumption of dangerousness:

> (1) a very small quantity of controlled substance; (2) a very modest amount of money paid for the drugs in the offending transaction; (3) merely peripheral involvement by the alien in the criminal activity, transaction, or conspiracy; (4) the absence of any violence or threat of violence, implicit or otherwise, associated with the offense; (5) the absence of any organized crime or terrorist organization involvement, direct or indirect, in relation to the offending activity; and (6) the absence of any adverse or harmful effect of the activity or transaction on juveniles.

*Id.* at 276-77.

Additionally, "such commonplace circumstances as cooperation with law enforcement authorities, limited criminal histories, downward departures at sentencing, and post-arrest (let alone post-conviction) claims of contrition or innocence do not justify such a deviation." *Id.* at 277.

The IJ and BIA did not apply *In re Y-L-* (which post-dates their rulings) in denying Perez's petition. The Respondent argues that, if remanded, Perez's claim for withholding of removal would necessarily fail under *In re Y-L-* because the six circumstances are not all present. I agree. Although the BIA did not use the correct standard applicable in its August 2001 decision, *In re Y-L-* now provides the standard for determining whether narcotics offenses are particularly dangerous, remanding Perez's claim in reliance on the *Frentescu* standard would be futile.

In response, Perez argues that *In re Y-L-* exceeds the AG's rule-making authority and that *In re Y-L-* is inapplicable to her because of its impermissibly retroactive effect. Perez likens the "rebuttable presumption" of *In re Y-L-* to statutes and regulations that have eliminated certain relief for aliens convicted of particularly serious crimes, citing *St. Cyr,* 533 U.S. 289 (repeal of discretionary relief from deportation did not apply retroactively), and *Kankamalage v. INS*, 335 F.3d 858 (9th Cir. 2003) (regulation eliminating availability of asylum for aliens convicted of particularly serious crimes did not apply retroactively). *In re Y-L-*, however, is a binding decision of the Attorney General, who under section 1231(b)(3)(B) has the authority to determine what constitutes a particularly serious crime. Because *In re Y-L-* is not a statute or regulation, the problem of retroactivity is not present here. *See Reyes-Sanchez v. Ashcroft*, 261 F. Supp. 2d 276,

287-88 (S.D.N.Y. 2003) (statute leaves determination of particularly serious crimes up to the discretion of the Attorney General).

Accordingly, I will rely on *In re Y-L-* and the rule announced there to conclude that remand on this ground would be futile.

B.    <u>CAT claim</u>

The IJ and BIA determined that Perez failed to establish eligibility for relief under CAT because she did not show that she would be subject to torture, as defined in the implementing regulations, if removed to Colombia.  In reaching that determination, the BIA relied on an erroneous prior ruling, *In re S-V-*, 22 I. & N. Dec. 1306, 2000 WL 562836 (BIA 2000), and its interpretation of government "acquiescence" to acts of torture committed by private parties.

1.    *Implementing Regulations*

The regulations implementing CAT set forth the following pertinent definitions:

> (1) Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, *when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity*.
>
> ***
>
> (7) *Acquiesence* of a public official requires that the public official, prior to the activity constituting torture, have *awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity*.

8 C.F.R. § 208.18 (emphasis added).

2.    *IJ and BIA Decisions*

According to the IJ's December 16, 1999, oral decision:

> There is no evidence in the record of proceedings that [Perez] would, on
> return to Colombia, be in the custody or physical control of any public
> official of the government of Colombia or that any harm directed towards
> [her] would be inflicted or instigated with the consent or acquiescence of a
> public official or person acting in an official capacity for the Colombian
> government.
>
> The Court must conclude, based on a plain reading of the regulation, that the
> respondent has not met the definition of torture as implemented by the United
> States. [Perez's] counsel has preserved his argument regarding the
> appropriateness of the regulations and, indeed, the implementation of the
> Convention, but this Court is without authority to adjudicate those matters as
> is acknowledged.

Gov't Exhibit 9, Oral Decision of IJ (Dec. 16, 1999) at 9.

The BIA further elaborated its understanding of the government acquiescence standard,

relying heavily on *S-V-*:

> [Perez] does not allege that she fears torture inflicted by a government
> official. Rather, she fears that she may be harmed by narcotics organizations
> in Colombia. . . . She therefore must provide evidence that the torture she
> fears at the hands of narcotics organizations would be at the instigation of or
> with the consent or acquiescence of Colombian officials or persons acting in
> an official capacity. *See Matter of S-V-, supra.* A public officials's [*sic*]
> acquiescence to torture requires that the public official, prior to the activity
> constituting torture, have awareness of such activity and thereafter breach his
> or her legal responsibility to intervene to prevent such activity. *Id. The
> respondent must demonstrate that the Colombian officials are willfully
> accepting of the narcotics organizations' torturous activities. Id.*
>
> In this case, [Perez] has failed to demonstrate that the Colombian
> Government's failure to protect its citizens is the result of deliberate
> acceptance of the narcotics organizations' activities. In fact, the record
> reflects that the Colombian Government actively, although to date
> unsuccessfully, combats narcotics organizations. Furthermore, a
> government's inability to control a group ought not lead to the conclusion that
> the government acquiesced to the group's activities. *Id.*

Gov't Exhibit 10, Decision of BIA (Aug. 22, 2001) at 3 (emphasis added).

      3.     *Standard for Government "Acquiescence" to Torture by Private Actors*

In outlining the standards under CAT, the BIA relied heavily on *S-V*, and stated that Perez "must demonstrate that the Colombian officials are *willfully accepting* of the narcotics organizations' torturous activities." *Id.* (emphasis added). The Ninth Circuit has explicitly disagreed with *S-V-* and that ruling's interpretation of the term "acquiescence" with respect to state action. *Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir. 2003) (holding that BIA's interpretation of term "acquiescence" to require proof that government is "willfully accepting of" torture, instead of proving that public officials are *aware* of torture, impermissibly narrowed clear intent of Congress).

The Second Circuit has likewise considered the intent of Congress in ratifying CAT and concluded that "torture" does not require that acts be "willfully accepted" by government officials. *Khouzam*, 361 F.3d at 170. *But cf. Ramsameachire*, 357 F.3d at 184 (2d Cir. 2004) (concluding that under CAT torture is defined as the "intentional infliction of pain or suffering that is *perpetrated or sanctioned* by a nation's authorities"). In *Khouzam*, the Court of Appeals discussed acquiescence in detail and held that the petitioner need show only that government officials "know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it." *Id.* There is no additional requirement of official "consent or approval." *Id.* Because the BIA decision relied on *S-V-* and reasoned that Perez "must demonstrate that the Colombian officials are willfully accepting of the narcotics organizations' torturous activities," the BIA did not apply the correct legal standard.

-10-

**V.      Conclusion**

By failing to consider her dangerousness to the community, the BIA applied the wrong legal standard to Perez's petition for withholding of removal at the time of its decision. Nevertheless, Perez would not be eligible for withholding of removal under the current standard for narcotics offenses set forth in *In re Y-L-*.

Because the BIA also applied the wrong legal standard to Perez's application for relief under CAT, the final order of deportation is vacated and the case is remanded to the BIA with instructions to remand to the IJ for further consideration consistent with this opinion.

Perez's petition for a writ of habeas corpus (doc. # 1) is GRANTED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 17th day of February 2005.

_/s/ Stefan R. Underhill_____
Stefan R. Underhill
United States District Judge
